USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 6, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE: REPUBLIC AIRWAYS HOLDINGS:
INC., et al.,                           :
                                        :
            Debtors,                    :
                                        :
AD HOC COMMITTEE OF EQUITY              :
HOLDERS OF REPUBLIC AIRWAYS             :        16-cv-3315 (KBF)
HOLDINGS INC.,                          :
                                        :        OPINION & ORDER
            Appellant,                  :
                                        :
            -v-                         :
                                        :
REPUBLIC AIRWAYS HOLDINGS INC.,         :
et al.,                                 :
                                        :
            Appellees.                  :
-----------------------------------------------------------X
KATHERINE B. FORREST, District Judge:

Before the Court is a motion for a temporary restraining order and a stay

pending appeal by the Ad Hoc Committee of Equity Holders of Republic Airways

Holdings Inc. ("Ad Hoc Committee" or "Movants")[1] from an order of the Bankruptcy

Court dated May 3, 2016 (the "Order"). That Order granted Debtors' (collectively,

"Republic" or "Debtors") motion pursuant to Sections 363(b), 363(m), and 365(a) of

the Bankruptcy Code and Bankruptcy Rules 6004, 6006 and 9019 for authorization

to (i) assume codeshare and related agreements, as amended, with Delta Air Lines,

Inc. ("Delta"), (ii) lease certain property of the estate and (iii) settle claims between

Delta and the Debtors. (May 4, 2016 Gelber Decl., Ex. A, ECF No. 10.)

---

[1] The Ad Hoc Committee consists of a group of three equity holders.

The Ad Hoc Committee's motion is opposed by the Debtors, Delta, and the Official Committee of Unsecured Creditors.  In the absence of a TRO and/or stay, the transactions authorized by the Bankruptcy Court's Order become effective at 12:01 p.m. on Friday, May 6, 2016.

The core issue in this dispute concerns whether the Bankruptcy Court exceeded its authority when it approved a settlement of various claims by Delta consisting of a number of business agreements and an allowed unsecured claim in the amount of $170 million.  The Bankruptcy Court approved the settlement in a thorough and detailed decision following an evidentiary hearing.

Movants assert that while the settlement is portrayed as an integrated set of agreements – a "global settlement" – that characterization is incorrect.  In fact, according to Movants, the agreements that comprise the settlement are individual, and need not and indeed should not be considered as interrelated.  Movants assert that the "global settlement" concept is being used to obscure that the $170 million allowed unsecured claim is, in part, not consideration for the resolution of any claim but rather just a payment for a separate deal.  When some or all of the $170 million is viewed as a separate payment, unrelated to any claim, Movants assert that the settlement inappropriately dilutes equity holders.   Movants bring this motion to prevent implementation of the deals – the proverbial "scrambling of the eggs" – so that they can appeal the Bankruptcy Court's Order.

In order to succeed on this motion for a TRO, Movants must demonstrate either a likelihood of success on the merits of such appeal or sufficiently serious

questions going to the merits to make them fair grounds for litigation, (2) irreparable harm, and (3) that the balance of hardships tips decidedly in their favor. MyWebGrocer, L.L.C. v. Hometown Info., Inc., 375 F.3d 190, 192 (2d Cir. 2004).  As discussed below, they have failed to carry their burden.[2]

In short, the settlement approved by the Bankruptcy Court is properly characterized as "global."  The Bankruptcy Court so found as a matter of fact and the Court finds no basis to disturb that finding.  In addition, Movants have failed to demonstrate that the Bankruptcy Court did anything other than act within its statutory authority.  Settlements of claims that consist of a combination of business agreements and a monetary component are routine and happen all the time.  The approval by the Bankruptcy Court of an unsecured claim in a particular amount as part of its approval of an overall set of agreements is entirely consistent with an appropriate exercise of its discretion.

But looking beyond this, the Court must also note that it is unclear that Movants have any standing to bring this motion at all:  they have not shown the most basic requirement for constitutional standing, injury in fact.  The premise of their entire argument is that they will not receive something that they would otherwise receive by virtue of this settlement.  That is, that the settlement injures them.  It is not at all clear that this is so.  The only way that this settlement would impact them would be if, in the absence of the additional $170 million allowed

---

[2] At the oral argument on this motion, the Court noted that Movants had failed to proffer what the questions on appeal would be.  The Court discussed with the parties how they would characterize the questions on appeal and their responses are reflected in the transcript of the oral argument.

unsecured claim, the Debtor's valuation indicates that there is hope for some recovery by the equity holders.  But they cannot make such a showing and have not even tried.  In fact, they have no idea whether the Debtor is already sufficiently under water that even in the absence of this settlement they would never stand to recover a penny.  They agreed with the Debtor and others to forego any determination of valuation at this time.  This substantial question as to whether Movants are harmed at all as a result of this settlement necessarily – and at a minimum – negatively impacts their ability to show irreparable harm on this motion.  In contrast, the Debtor has shown clear and persuasive irreparable harm that would and could result from the issuance of the requested relief.  As discussed below, if the deals are not allowed to become effective, within a few short days Delta has the unilateral right to walk away; walking away imperils 5,000 jobs, the ability of Republic to retain pilots and to provide the air carriage.  These are real, quite serious and concrete impacts.  Movants urge the Court to call Delta's bluff – they point to evidence that suggests that Delta really will not walk; but the Debtor and Delta point to Delta's contractual right to do so, the duration of the issues underlying the claims resolved by the settlement, the history of negotiations demonstrating a willingness by Delta to call it a day and walk, the availability of other regional carriers to replace the Debtor, and the approaching summer season necessitating immediate resolution one way or the other lest consumers be left on the tarmac.  In the face of these facts, this Court is unwilling to roll the dice.

For the reasons set forth below, the Court finds that the Ad Hoc Committee has failed to make a sufficient showing as to each of the elements necessary to entitle it to the preliminary relief that it seeks.  Accordingly, its motion is DENIED.[3]

I.     BACKGROUND[4]

Republic Airways Holdings Inc. is a holding company that provides scheduled regional passenger services through its wholly-owned operating air carrier subsidiaries; its sole sources of revenue are its subsidiaries' fixed-fee codeshare agreements with Delta, United Continental Holdings, Inc., and American Airlines Group, Inc.  The terms of Republic's relationship with Delta are governed by a series of agreements including a Single Class Agreement and a Dual Class Agreement.  These agreements provide for numerous terms and conditions relating to carriage of passengers for Delta.

In February 2015, Republic began to reduce its flying for Delta in violation of its agreements, and has subsequently continued to commit additional breaches of

---

[3] No party has challenged the Ad Hoc Committee's motion to the extent that it seeks to file documents relating to the motion under seal because such documents contain information subject to the Bankruptcy Court's May 2, 2016 sealing order.  The Ad Hoc Committee's motion is therefore granted solely as to the request to file documents under seal.  However, consistent with the proceedings in the Bankruptcy Court, the Court finds that there is a significant public interest in public disclosure of as much of the material submitted to this Court in connection with this motion as possible.  Accordingly, within three business days of this order, all parties who have made submissions in this matter before this Court shall file redacted copies of any briefs and declarations on the public docket.

[4] The following facts are primarily drawn from the findings of fact by the Bankruptcy Court and additional factual materials in opposition this motion.  The Court here recites only that background which is necessary to resolve the pending motion.  The relevant factual background is set forth more fully in the Bankruptcy Court's Modified Bench Ruling at docket entry 512 in Case No. 16-10429 (SHL) in the Bankruptcy Court.

its agreements that have persisted up through the settlement underlying this appeal.  On February 25, 2016, Republic filed a voluntary petition for bankruptcy protection pursuant to Chapter 11.  Among other issues, Republic found that its cost structure made operating under the agreements impractical.

Prior to Republic's commencement of the Chapter 11 cases, and in the midst of Republic's negotiations with its codeshare partners and others to secure compensation for certain costs and to improve its liquidity position, in October 2015 Delta brought suit against Republic and its operating air carrier subsidiary to recover lost profits that Delta claimed it would have earned if Republic had operated all flights as required by the parties' existing agreements (referred to as the "Delta Litigation" or "Delta Litigation Claims").

Republic and Delta began negotiating in late 2015 in an attempt to resolve their differences, a process that continued through Republic's bankruptcy filing and ultimately resulted in the settlement that underlies the Ad Hoc Committee's instant challenge.  It is undisputed that Delta has in fact suffered significant damage as a result of the Debtor's underperformance or non-performance of its contractual obligations.  The total amount of that damage has been variously estimated as in the many hundreds of millions of dollars to well over a billion.  Counsel for Movants conceded at oral argument on this motion that if the $170 million unsecured claim was consideration for settlement of the Delta Litigation Claims alone, it would be a "no brainer."  (The Court responded that if that is the case, it seems counterintuitive that Movants could be harmed if Republic in fact obtained a <u>better</u>

deal as part of that settlement; rather than merely "paying," it was actually obtaining additional benefits in the form of amended business terms.)

Settlement of the Delta Litigation Claims could theoretically consist solely of a damage payment. The Bankruptcy Court found that instead, it was in the best interest of the Debtor to attempt to salvage the relationship with Delta. This required a renegotiation of the agreements underlying that relationship – with a give and take on both sides. The parties had intense negotiations over just a few days by the same teams negotiating all agreements and the amount of an allowed unsecured claim. The result of these negotiations was settlement with Delta of the outstanding business issues which formed the basis for its Litigation Claims. The Bankruptcy Court found that the settlement was a global one that contained a number of interrelated elements:

(1) A DIP Credit Agreement under which Delta will provide post-petition financing up to the aggregate principle amount of $75 million;

(2) The assumption of an Amended Single Class Agreement;

(3) The assumption of an Amended Dual Class Agreement;

(4) The entry into the A & R Slot Lease;

(5) The assumption of the LGA 2 Slot Lease;

(6) The assumption of the Amended Ground Handling Agreement; and

(7) The settlement and release of the Delta Litigation Claim.

Implicit in the Bankruptcy Court's findings is the fact that not only does the settlement resolve the monetary damage component of Delta's Litigation Claims,

but it also addresses the underlying causes for the breach.  Without such an integrated resolution, past damages might be payable for each day would result in new damages added.  Those findings include a determination that addressing the cause of Republic's inability to perform was thus not only necessary to resolution of the Delta Litigation Claims, but also to enabling Republic to get back on its feet generally and emerge successfully from Chapter 11.  In a declaration submitted in connection with this motion, Republic's Chief Financial Officer, Joseph P. Allman, states that the most important aspect necessary to make its Chapter 11 resolution successful is the prompt negotiation and immediate implementation of new agreements with its codeshare partners, of which the agreement with Delta is the first.  (Apr. 18, 2016 Allman Decl. ¶ 39.)

On March 24, 2016, Republic moved in the Bankruptcy Court to approve the settlement.  Although there initially were several objections to both motions, all but the objections of the Ad Hoc Committee were resolved.  Notably, among the objections that were resolved were those made by the Official Committee of Unsecured Creditors, who now support the Debtors' opposition to the pending motion.  This of course means that, as Delta's claim is allowed over the other unsecured claims, the Committee of the Unsecured Creditors represents the group with the most to lose if the Bankruptcy Court in fact erred.

The Bankruptcy Court held an evidentiary hearing on Republic's settlement motion on April 21, 2016.  A number of witnesses testified and documents were received into evidence.  The Ad Hoc Committee did not present any witnesses or

offer other evidence.  As stated above, in its May 3, 2016 Order, the Bankruptcy Court approved Republic's motion and overruled the objections of the Ad Hoc Committee.[5]  The Bankruptcy Court found that the settlement was fair and equitable and in the best interests of the estate.  In a well-reasoned and thorough decision in its Modified Bench Ruling in support of the May 3, 2016 Order, the Bankruptcy Court concluded that the settlement should be approved given:  the likelihood of success of the Delta Litigation and other claims that Delta might pursue in the bankruptcy; the risk, expense, and delay of such litigation; the interest of the creditors and the overall support of all interested parties other than the Ad Hoc Committee; the competency of the parties negotiating the settlement; the releases provided under the agreement; and the settlement being the result of arm's length bargaining.  The Bankruptcy Court also found that the Debtors satisfied the standard for assumption and use of estate property under applicable bankruptcy law.

As part of its factual findings in support of its approval of the settlement, the Bankruptcy Court found that the various agreements that comprised the components of the settlement constituted a single global settlement.  It specifically made findings that the parties exchanged global settlement numbers based on a

---

[5] The Ad Hoc Committee had sought to provide the post-petition DIP financing.  The Debtor, along with its advisors, chose Delta's package instead.  The Bankruptcy Court approved the Delta financing arrangement.  At the May 5, 2016 hearing on this motion, given the assertions made here, the Court questioned whether the true purpose behind the Ad Hoc Committee's motion was an attempt to impede the approved settlement and hope that this resulted in Delta walking away from the agreements, hence allowing the Ad Hoc Committee to step in and provide post-petition financing. Counsel vigorously disputed this as the Movants' motivation.  He pointed to the fact that the Committee had not appealed the approval of Delta's financing arrangement and reasserted the issue of equity dilution.

negotiation between the Debtors and Delta on all issues rather than based on a piecemeal resolution of individual issues.  On this point, the Bankruptcy Court further found that such a global resolution is the only sensible way to view the settlement because it involves changes to so many terms of the parties' ongoing relationship and resolution of existing litigation and claims that could be asserted in the bankruptcy.

At the oral argument on this motion, Delta referenced a number of different pieces of evidence supporting the Bankruptcy Court's factual findings and this Court refers the reader to the transcript of the argument.  In addition, counsel pointed to certain contractual provisions which supported the notion that these were integrated agreements.  He pointed, inter alia, to paragraph 6 of the Bankruptcy Court's May 3, 2016 Order which provides for an extensive release by Delta of all claims.  He also pointed to a clause in one of the agreements that states,

> Delta and Carrier agree that (i) the DIP Facility, (ii) the A & R Slot Lease, (iii) the assumption of the LGA 2 Slot Lease, (iv) the Single Class Amendment 14 and assumption of Single Class Agreement as amended thereby, (v) the Dual Class Amendment and the assumption of the Dual Class Agreement as amended thereby and (vi) the settlement of certain of Delta's pre-petition claims, each represent an essential necessary component in the interdependent and cross-conditioned settlement (the "Settlement") among the parties to such agreements.  The Settlement represents a comprehensive change in the circumstances, transactions and relationships between such parties.  Once effective, the parties will engage in a series of highly-structured and financial and operational transactions with each other and third parties that would be impossible to reverse in whole or in part…

(May 4, 2016 Gelber Decl., Ex. D, ¶ 17; Ex. N, ¶ 19(B); Ex. O, ¶ 10(B); Ex. Q, ¶ 5(B).)

In support of its contention that the agreements are more properly viewed as individual, standalone agreements, the Ad Hoc Committed pointed both the Bankruptcy Court and this Court to a worksheet used by the Debtor in connection with its negotiations with Delta, a most-favored nations ("MFN") clause inuring to Delta's benefit, the Debtors' SEC filings, and other evidence. The Bankruptcy Court reviewed each argument and made what amounts to factual findings that each was without merit.

The $170 million allowed unsecured claim plays a central role in all of this (and particularly with regard to the worksheet.) According to the Ad Hoc Committee, it represents different monetary amounts – some properly attributable to settlement of Delta's Litigation Claim but additional amounts attributable to consideration for other purposes. Thus, according to the Committee, monetary consideration is being paid for more than just settlement of the Litigation Claims, and that is inappropriate. Whether the $170 million is consideration for an integrated deal or separate deals is a factual question. And the Bankruptcy Court reviewed this question carefully and made factual findings.

In assessing the Ad Hoc Committee's likelihood of success on the merits on any appeal this Court notes the substantial factual findings that undergird the Bankruptcy Court's determinations with regard to the above. It made specific factual findings that substantial economic benefits would accrue to the Debtors as a result of changes contained in the Amended Single Class Agreement and Amended Dual Class Agreement, and that other provisions—including provisions relating to

slot leases, the reduction of the Debtors' exposure to risk and the elimination of Delta's right to terminate for convenience—also all provided substantial benefits to the Debtors and ensured that the Debtors and Delta would be committed to remaining long-term partners.

With respect to the settlement of Delta's Litigation Claims, the Bankruptcy Court made factual findings that the settlement provided substantial benefits to the Debtors; it was undisputed that the Debtors' had breached their contracts with Delta; the total potential size of claims that Delta could assert against the Debtors; the Debtors likelihood of prevailing in that litigation was uncertain; and that the Debtors were likely to commit further breaches for failure to perform under their existing contracts with Delta.  The Bankruptcy Court expressly considered—and rejected—based on factual findings amply supported in the record, the same arguments regarding the reasonableness of the settlement that the Ad Hoc Committee raises here.  The Bankruptcy Court also made factual findings as to the alternatives to the settlement—which, pursuant to paragraph 6 of the May 3, 2016 Order, provides for the release of all claims—concluding that those alternatives were less attractive than the settlement put before it.

With regard to the MFN, the Bankruptcy Court found that the MFN clause was appropriate because it contained significant protections against an undue increase in Delta's claim and provided a needed incentive for Delta to agree to be the first codeshare partner to enter into a settlement and new agreement with Republic.

In relation to the pending motion, the Ad Hoc Committee makes an additional argument with regard to irreparable harm.  As stated, it asserts that there is sufficient evidence of Delta's desire to have a deal with Republic that it is unlikely to walk away even if a TRO and stay are granted.  In this regard, it points, inter alia, to the fact that the various agreements that are part of this settlement give Delta a unilateral right to extend consummation of the deal to November 1, 2016.  However, the Bankruptcy Court made a factual finding that the agreements contemplate a deadline for approval of May 14, 2016 and there was no credible evidence to support the position that the agreement could be indefinitely extended. Moreover, and as mentioned above, there is evidence before this Court on this motion that delay in consummation may result in very serious harm including, inter alia, a failure of the Debtor to successfully emerge from Chapter 11 and a resulting loss of 5,000 jobs, an inability to retain necessary pilots as problems continue to mount without resolution, and the upcoming summer flight schedule requiring Republic to be able to operate or risk leaving consumers on the tarmac. (See, e.g., May 4, 2016 Allman Decl. ¶ 12.)

## II.   LEGAL STANDARDS

### A.   Standard of Review of Bankruptcy Court's Findings

This Court's determination whether to grant a temporary restraining order or to stay a bankruptcy court order pending appeal is a legal question that the Court reviews de novo.  See In re Enron Corp., 419 F.3d 115, 124 (2d Cir. 2005).  In considering the framework in which to consider the preliminary relief that the Ad

Hoc Committee seeks, however, this Court must bear in mind the standards of review that govern the Ad Hoc Committee's appeal on the merits. In terms of a full merits appeal, "[a] district court functions as an appellate court in reviewing judgments rendered by bankruptcy courts." In re Adelphia Commc'ns Corp., 361 B.R. 337, 346 (Bankr. S.D.N.Y. 2007). As such this Court reviews the Bankruptcy Court's legal conclusions de novo and reviews factual findings only for clear error. In re Enron Corp., 419 F.3d at 124. "A finding of fact is clearly erroneous if, after reviewing the entirety of the evidence, 'the reviewing court is left with the definite and firm conviction that a mistake has been committed.'" In re AMR Corp., 490 B.R. 470, 475 (Bankr. S.D.N.Y. 2013) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). The district court must, furthermore, "review[ ] matters within a bankruptcy court's discretion under an abuse of discretion standard." Id. (citing In re Crysen/Montenay Energy Co., 166 B.R. 546, 549-50 (Bankr. S.D.N.Y. 1994)); see also In re WorldCom, Inc., 347 B.R. 123, 136 (Bankr. S.D.N.Y. 2006) ("The decision whether to approve a compromise is within the discretion of the bankruptcy court."). Those standards of review are highly relevant to this Court's consideration of whether the Ad Hoc Committee has shown a likelihood of success on the merits of its appeal, which, as discussed below, is a primary factor as to whether it is entitled to the preliminary relief that it seeks.

    B. Temporary Restraining Order

    A temporary restraining order "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the

burden of persuasion." Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007). To obtain a preliminary injunction or temporary restraining order, the moving party must demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair grounds for litigation and a balance of hardships tipping decidedly in the movant's favor." MyWebGrocer, L.L.C. v. Hometown Info., Inc., 375 F.3d 190, 192 (2d Cir. 2004). The function of a temporary restraining order is to maintain the status quo for a short period of time, usually only until a hearing can be held. See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 439 (1974).

   C. Stay Pending Appeal

   In determining whether to grant a motion for a stay pending appeal, this Court analyzes the following factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009). "The burden is on the moving party to establish these elements." In re New York Skyline, Inc., 520 B.R. 1, 5 (Bankr. S.D.N.Y. 2014). "A stay of a judgment pending an appeal is an exercise of judicial discretion and is not a matter of right, even if irreparable injury might otherwise result." Id.

III.    DISCUSSION[6]

Upon consideration of the relevant factors, the Court concludes that the Ad Hoc Committee has failed to meet its burden as to each of the prongs necessary to entitle it to the extraordinary preliminary relief that it seeks.  The Court's determination is based upon its own, independent review of the evidence before the Court on this motion as well as its review on the thorough and well supported factual findings of the Bankruptcy Court.

First, the Ad Hoc Committee has failed to show a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation or that the balance of hardships tips decidedly in the Ad Hoc Committee's favor.  Second, the Court also concludes that the Ad Hoc Committee has failed to show that it would suffer irreparable injury due to denial of its requested relief.  Third, the Ad Hoc Committee has failed to rebut appellees' claim of substantial injury that would ensue if the requested relief was granted.  Fourth, the Court finds that the public interest counsels against granting the Ad Hoc Committee's requested relief.

A.    Likelihood of Success

The Court first addresses the Ad Hoc Committee's likelihood of success on the merits of its appeal.  The Ad Hoc Committee argues that it has a strong likelihood of success, asserting that the Bankruptcy Court erred in approving the grant of an

---

[6] Because the standards for granting a temporary restraining order and a stay pending appeal overlap in significant respects, the Court considers both requests for relief together.

allowed $170 million unsecured claim to Delta in two respects: (1) the Bankruptcy Court had no legal authority to create bankruptcy claims as consideration for Delta's agreement to modify executory contracts, and (2) the settlement amount was erroneously compared to a potential damage exposure that lacked a credible evidentiary basis.  Neither argument is supported by precedent or the factual record before the Bankruptcy Court or this Court.  As to the first argument, the Bankruptcy Court's approval of the settlement was well within its legal authority.  As to the second argument, the Bankruptcy Court's factual findings supporting its approval of the settlement were not clearly erroneous—its detailed factual findings were supported by substantial evidence.  Below, the Court first explains why the Ad Hoc Committee's argument as to legal authority lacks merit, and then explains why its factual challenge fails in light of the applicable standards.

The Ad Hoc Committee argues that there is no legal authority allowing the Bankruptcy Court to approve as a "settlement" what are in reality a series of separate agreements, only one of which concerns legal claims.  According to the Ad Hoc Committee, the effect of bundling these disparate elements together was to create "claim currency," something not provided for by any statute or legal principle.  Although the Ad Hoc Committee casts the issue as a legal question for which the Bankruptcy Court's decision is subject to de novo review, the decision is reviewable only for clear error to the extent that the Ad Hoc Committee seeks to challenge the Bankruptcy Court's underlying factual findings.  In re Enron Corp., 419 F.3d at 124.

Although raising this legal argument twice in its preliminary statement in its memorandum of law on this motion, the body of the Ad Hoc Committee's memorandum devotes a paltry single paragraph that in conclusory fashion asserts that the Bankruptcy Court had no legal basis to allow an unsecured claim in favor of a creditor as consideration for that creditor's agreement to modify an executory contract.  (Ad Hoc Committee's Mem. of Law, ECF No. 9, at 1, 3, 11-12.)  At the May 5, 2016 hearing, the Ad Hoc Committee similarly failed to cite any authority in support of this contention.  The Ad Hoc Committee's counsel argues, in effect, that the lack of legal authority is the point—that there is no authority to cite because none exists.  This position misunderstands the Ad Hoc Committee's obligation in relation to this motion.  To the extent that the Ad Hoc Committee's view is that the Bankruptcy Court acted beyond any statutory or legal authority, it needed to lay out existing authority and clearly argue why these particular actions are contrary to or exceed it.  It failed to do so. The Ad Hoc Committee did not discuss the legal principles in the necessary detail to persuade this Court and, as the Court discusses below, the Court is left with the firm conviction that this is because none are helpful.  The Ad Hoc Committee has therefore failed to meet its burden of showing that it has a likelihood of success on the merits or that its challenge raises sufficiently serious questions going to the merits of its appeal.

Notwithstanding the Ad Hoc Committee's foregoing deficiency, the Debtor and Delta assert that the Bankruptcy Court's authority to approve the settlement

and allow Delta's $170 million unsecured claim is independently supported by each of Bankruptcy Rule 9019 and 11 U.S.C. §§ 363 and 365.  The Court agrees.

Bankruptcy Rule 9019 empowers bankruptcy courts to approve compromises and settlements if they are fair, equitable, and in the best interests of the estate. See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968); In re Purofied Down Products Corp., 150 B.R. 519, 522 (Bankr. S.D.N.Y. 1993).  In making that determination, a bankruptcy court need not decide the numerous issues of law and fact raised by a settlement, but rather should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983) (quotation marks and alterations omitted).

Under § 363(b)(1), "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  In considering whether to approve a transaction conducted pursuant to § 363(b)(1), courts consider whether the trustee exercised sound business judgment, In re Chateaugay Corp., 973 F.2d 141, 144-45 (2d Cir. 1992), a question as to which the trustee is entitled to great deference, In re MF Global Inc., 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015).  Section 363(b) "on its face . . . confer[s] upon the bankruptcy judge virtually unfettered discretion to authorize the use, sale or lease, other than in the ordinary course of business, of property of the estate."  In re Lionel Corp., 722 F.2d 1063, 1069 (2d Cir. 1983); see also In re WorldCom, Inc., 347 B.R. 123, 136 (Bankr. S.D.N.Y. 2006) ("The decision whether to approve a

compromise is within the discretion of the bankruptcy court."). The Bankruptcy Court's role is not, however, to "determine whether the settlement was the best that could have been obtained." Nellis v. Shugrue, 165 B.R. 115, 123 (Bankr. S.D.N.Y. 1994).

Under § 365(a), a debtor in possession, subject to court approval, "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Rejection gives rise to a remedy for breach of contract in the non-debtor party that is treated as a pre-petition claim. 11 U.S.C. § 365(g).[7] Courts "approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." In re MF Global Holdings Ltd., 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012).

Pursuant to the above well-established principles, the Court is persuaded that, as a threshold matter, the Bankruptcy Court was well within its legal authority to approve this sort of settlement of legal claims and modifications to executory contracts resulting in an allowed unsecured claim for the counterparty to the settlement.[8] The Court next looks at whether, as a factual matter, there is any

---

[7] Pursuant to § 502(g)(1), a claim arising from the rejection of an executory contract has the same status as if such claim had arisen before the date of the filing of the debtor's petition. 11 U.S.C. § 502(g)(1).

[8] As Delta argued at the May 5, 2016 hearing (and which it subsequently followed up with in an email that cited and attached Orders and transcripts from In re Northwest Airlines Corp., Case No. 05-17930 (ALG) (Bankr. S.D.N.Y.), and In re Pinnacle Airlines Corp., Case No. 12-11343 (REG) (Bankr. S.D.N.Y.)), bankruptcy courts routinely, in other contexts, allow general unsecured claims in connection with concessions made in restructured agreements with non-debtor counterparties.

merit to the Ad Hoc Committee's argument that the Bankruptcy Court abused its discretion in its factual findings underlying its approval of the settlement.

The first factual question is whether the Bankruptcy Court clearly erred in concluding that the settlement was "global."  Based on this Court's review of the record and the parties' contentions, the Court finds that the Bankruptcy Court did not err in this finding, which was amply supported by the record.  As explained above, the Debtor and Delta's relationship is based on the same agreements that Delta alleged it breached in its Litigation Claims, and that undergird the entirety of its relationship.  To resolve those claims reasonably includes resolution of issues preventing or impeding performance.  Thus, a monetary settlement alone – irrespective of amount – was insufficient.  This is a sensible and practical determination.  What was necessary was a review of the parties' overall relationship and amendments to existing agreements or the addition of new ones which would allow the parties to move forward.  The result of this reasonable business approach as found by the Bankruptcy Court and confirmed by this Court, was a set of integrated documents.  That a monetary payment was part of that does not undermine the necessity of the agreements on business terms or the necessity of the payment itself.

In addition, the fact that the agreements are properly understood as part of an integrated global settlement is supported by the factual findings in the Bankruptcy Court's Modified Bench Ruling.  The Bankruptcy Court found that the parties exchanged global settlement numbers based on a negotiation between the

21

Debtors and Delta on all issues and that this was the only sensible way to view the settlement in light of the nature of the changes to so many terms of the parties' relationship.  This Court notes that at oral argument on this motion, counsel for the Ad Hoc Committee conceded that the same team negotiated all of the agreements that formed part of the settlement over a period of three days;  this fact further supports the finding of an integrated set of agreements.

But in addition, the fact that settlement of the Delta Litigation Claims is a necessary part of this set of integrated agreements is found in the broad release of claims.  That release forms a significant piece of the Bankruptcy Court's order of May 3 and insures that the parties are buying peace with regard to the past and moving forward.   In addition, as set forth in the Background section above, a number of the agreements contain a provision indicating that the agreement is part of an integrated whole that cannot exist as separate parts.  The Bankruptcy Court also made specific, amply supported findings rejecting the Ad Hoc Committee's reliance on other materials in the record that the Ad Hoc Committee seeks to rely on here.

In short, the evidence is overwhelming that the various agreements approved as part of the May 3 Order are part of a comprehensive and reasonable settlement. The Bankruptcy Court so found and this Court confirms that determination. [9] Both the business agreements and monetary components of the settlement were related

---

[9] To the extent that this was a legal question or mixed question of law and fact, the Court would nonetheless affirm the Bankruptcy Court's determination that this was a global, integrated settlement of which the settling of Delta's litigation claims and the modification of executory contracts were interlocking constituent parts.

to Republic's efforts to create a more workable relationship to increase Republic's revenue structure, pay for the costs that it is continuing to incur, and to remedy the issues causing the contract breaches that led to Delta's litigation claims against Republic.[10]

If this Court looks only at the $170 million allowed unsecured claim and asks whether it is – on its own – fair, equitable and reasonable with regard to the Litigation Claims, it easily concludes that it is.  The Ad Hoc Committee's challenge on this point again lacks merit.  At the outset, the Court again observes that a bankruptcy court's task in deciding whether to approve a settlement is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  In re W.T. Grant Co., 699 F.2d at 608 (quotation marks and alterations omitted); see also In re Purofied Down Products, 150 B.R. at 522. Having carefully reviewed the Bankruptcy Court's factual findings and the parties' arguments and materials submitted in relation to the pending motion in light of the applicable standards, the Court finds no basis to conclude that the Bankruptcy Court's factual findings in support of its conclusion that the settlement was fair and equitable and in the best interests of the Debtors' estates were clearly erroneous. (The Court notes again the implicit irony in the Ad Hoc Committee's position: that if the $170 million alone was proffered in settlement of the Litigation Claims, approval would be a "no brainer", but that by somehow combining it with other

---

[10] Even if the Bankruptcy Court found that the various components of the settlement are properly viewed as entirely distinct pieces that must be considered on their own individual merits, the Court would still conclude that the Bankruptcy Court acted well within its legal authority in approving all components of the settlement.

elements that add to the benefits accruing to the Debtor, approval becomes inappropriate).

As recited above, even when breaking the settlement into its two primary constituent parts (the business agreements on the one hand and the financial consideration in the form of an allowed unsecured claim on the other), the Bankruptcy Court made amply supported findings that each component of the settlement was fair, equitable and in the best interests of the Debtors.  As to the value of modifications to the executory contracts, the Bankruptcy Court found that substantial economic benefits would accrue to the Debtors as a result of the changes, including making specific findings as to the accretive value of the Amended Single Class Agreement and Amended Dual Class Agreement, provisions relating to the slot leases and providing for the reduction of Republic's future risk. The Bankruptcy Court's detailed findings regarding the propriety of the MFN clause were not, furthermore, clearly erroneous.  As to the value of the settlement of Delta's Litigation Claims, the Bankruptcy Court's findings were amply supported by its consideration of the potential size of Delta's claims, the fact that Republic's likelihood of prevailing was uncertain, and the recognition that Republic would continue to breach its agreements with Delta in the absence of modifications to its contracts and a full release.  Thus, the Bankruptcy Court did not clearly err in finding that the settlement would overall be accretive to the value of the Debtors' estate and thus benefit the estate's creditors.[11]

---

[11] To the extent that the Ad Hoc Committee argues that the Bankruptcy Court erred in relying on documents that were not part of the evidentiary record, the Court rejects this argument.  All of the

To summarize, the Bankruptcy Court's approval of the settlement was well within its established legal authority, its factual findings were well-supported in the record, and the Ad Hoc Committee has not met its burden of showing that the findings underlying the Settlement Agreement's approval would likely be set aside.

### B. Irreparable Injury

The Court must consider irreparable injury in two respects. First, whether the Ad Hoc Committee would suffer irreparable injury if its requested relief is denied. Second, whether other parties would suffer substantial injury if any of the requested relief is granted. These issues ultimately boil down, on the one hand, to the Ad Hoc Committee's desire to maintain a right to appeal when it is unclear that it has any injury in fact, versus the very real, factually grounded events that could result in the loss of thousands of jobs, an inability to retain pilots, and the viability of the Debtors as a going concern. Considered in this proper light, these factors weigh decidedly in favor of the Debtors. The Court addresses the parties' respective assertions of irreparable harm in turn.

The Ad Hoc Committee argues that if its requested relief is denied then it will lose its ability to effectively challenge the Bankruptcy Court's Order on appeal, as the issue will become moot once the Bankruptcy Court's Order is effective.[12]

---

deposition cites used by the Bankruptcy Court were otherwise amply supported by the evidentiary record; as a result, the Bankruptcy Court's citation to this material did not affect the Ad Hoc Committee's substantial rights and cannot serve as a basis for reversal or appeal. See Fed. R. Civ. P. 61; Morse v. Rescap Borrower Claims Trust, No. 14 Civ. 5800 (GHW), 2015 WL 353931, at *3 (S.D.N.Y. Jan. 26, 2015).

[12] At the May 5, 2016 hearing, counsel for the Ad Hoc Committee did, of course, argue that in the event its motion is denied, the Ad Hoc Committee will contest that its appeal has been rendered moot.

Ultimately, the Ad Hoc Committee's irreparable harm argument boils down to a concern that its equity will be diluted if Delta's $170 million unsecured claim is allowed.  It is the right to share in the equity holders' recovery from the Debtors' estate that provides the basis for its injury, which ultimately may not constitute an injury in fact.  As explained, under the circumstances, the Ad Hoc Committee's alleged injury is too attenuated to constitute irreparable injury warranting the extraordinary relief sought here.

All parties, including the Ad Hoc Committee, elected to hold off on making a valuation determination.  Such a determination would allow us to answer the question as to whether the $170 million in the allowed claim in fact dilutes equity.  If the equity is already underwater, then allowance of the claim does not worsen that position.  (Nor does the fact of possible follow on settlements with other carriers regarding their code share agreements.)   At a minimum, then, not only is the Ad Hoc Committee's harm speculative, but so is the question of any cognizable, constitutionally necessary injury for standing.  In terms of the Committee's argument that if their appeal is moot the public will be deprived of an answer to the question of appropriateness of approval by the Bankruptcy Court, as this Court views the question as thin to the point of sheer, it does not find that to be a basis to ground a finding of irreparable harm.

In stark contrast to the position in which the Ad Hoc Committee finds itself, the Court finds that substantial injury to the Debtors would and could flow from this Court's imposition of a temporary restraining order or a stay pending appeal.

Although the Ad Hoc Committee argues that the possibility of an extension to the agreements between Delta and Republic means that no such harm would be suffered (and that there is no evidence showing that Delta would actually decline to extend the deadline for the agreement), it is clear that delay in approval of the settlement and changes to the codeshare agreements beyond the May 14, 2016 deadline could derail the settlement and have significant negative impacts on Republic's negotiations with its other codeshare partners.  The Ad Hoc Committee's assessment of this risk is inconsistent with the Bankruptcy Court's factual findings, which were supported by substantial evidence.  Among the substantial issues that could lead Delta to walk away if further delay in consummation of the agreements ensues, are the concerns about the setting of Republic's and Delta's summer flight schedule and the availability of other regional partners, as well as ongoing, daily issues relating to the retention of pilots who need to know now that they are working for a viable company. (May 4, 2016 Allman Decl. ¶ 12.)  In short, the Ad Hoc Committee has not rebutted the appellees' assertion that the time for approval and consummation of the settlement would in fact be sufficiently extended through a full appeal on the merits, a risk that undoubtedly would cause significant harm to the Debtors' estate and their employees, and to Delta.  This potential risk is not a gamble that the Debtors, or this Court, can appropriately take on this record.[13]

---

[13] The Court notes that, although the Ad Hoc Committee contests the assertion that a bond of $1.6 billion is appropriate to compensate for the Debtors' potential loss if the settlement is not consummated, its counsel conceded at the May 5, 2016 hearing that the Ad Hoc Committee would not be able to post a bond in that amount by the deadline of the Bankruptcy Court's May 3, 2016 deadline if a stay of that Order were to be imposed.

C.  Public Interest

Finally, with respect to the public interest prong, the Ad Hoc Committee primarily argues that the public interest is in its favor because the settlement improperly dilutes the value of the claims of all of the Debtors' equity holders.  This argument is flawed for several reasons.  First, the Ad Hoc Committee's premise is (as discussed) entirely speculative.  Moreover, it is factually incorrect.  The Bankruptcy Court did not abuse its discretion in finding that the agreement would be accretive in value to the estate and all of its stakeholders in excess of Delta's allowed claim and that the risks of litigating Delta's potentially $1.7 billion claims could have resulted in allowed claims far in excess of the $170 million settlement.  Second, and even more importantly, the public interest purportedly served by preserving the equity holders' potential claims must be weighed against the interests of all other stakeholders seeking a successful resolution of the Debtors' Chapter 11 cases.  Consideration of such interests clearly favors denial of the Ad Hoc Committee's requested relief because of the substantial real-world impact that rejection of the settlement could have on Debtors' viability as a business, the jobs of thousands of its employees, and the potentially substantial flight disruption that could result if Delta finds it necessary to walk away from the settlement.  Third, approval of the settlement also serves the public interest favoring expeditious resolution of bankruptcy proceedings.  In re Chemtura Corp., No. 09-11233 (REG), 2010 WL 4638898, *8 (Bankr. S.D.N.Y. Nov. 8, 2010); see also In re Dewey & LeBoeuf LLP, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012) ("[S]ettlements and

28

compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.").

IV.     CONCLUSION[14]

For the reasons set forth above, the Ad Hoc Committee's requests for a temporary restraining order and a stay pending appeal are DENIED.  The Ad Hoc Committee's request to file documents under seal is GRANTED.

SO ORDERED.

Dated:      New York, New York
            May 6, 2016

_____
KATHERINE B. FORREST
United States District Judge

---

[14] The Court has considered all of the Ad Hoc Committee's other arguments and concludes they are without merit.